IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

------------------------------------ x
UNDER ARMOUR, INC.                  :
1020 Hull Street
Baltimore, Maryland 21230         :
                               :
               Plaintiff,             :       1:12-cv-01283-JKB
                               :
      v.                               :
                               :       ECF Case
BODY ARMOR NUTRITION, LLC.      :
630 Clinton Place
Beverly Hills, California 90210    :
                               :
               Defendant.          :
------------------------------------ x

## ANSWER

Defendant Body Armor Nutrition, LLC ("Body Armor"), by its undersigned attorneys, for its Answer to the Complaint of Plaintiff Under Armour, Inc. ("UA"), states as follows:

### Preliminary Statement

This lawsuit is a prime example of trademark bullying by a corporate giant seeking to stifle an innovative start-up company. Last year – after years of planning including registration of its BODY ARMOR trademark and pilot sales of its new product – Body Armor commenced a nationwide launch of a revolutionary, category-creating line of nutrient-enhanced juice beverages, which are marketed and sold under the federally registered BODY ARMOR® trademark. UA, a massive public company whose business is focused exclusively on sports apparel, now contends that Body Armor's sale and

promotion of nutrient-enhanced juice beverages under the BODY ARMOR® trademark will infringe and dilute UA's alleged "family" of ARMOUR marks.  But UA's own admissions, conduct, and failure to act sooner all demonstrate that UA's claims against Body Armor are without merit.  It is impossible that consumers or retailers of either brand would confuse the two.  UA and Body Armor operate in disparate industries, produce distinctly unrelated products, and share no branding or logo similarities.

UA's failure to act sooner belies its claim that irreparable harm will result if Body Armor continues to use its BODY ARMOR® trademark.  UA's Complaint fails to disclose that *the BODY ARMOR® trademark is registered* with the U.S. Patent & Trademark Office ("USPTO"), that the intent-to-use application for the trademark was filed with the USPTO *five years ago*, that the trademark was first used in commerce two years ago, that the nationwide launch of the product using the trademark has been underway for nearly a year, and that, until now, UA never raised any objection to the trademark.  Body Armor has built a brand around the BODY ARMOR® trademark in good faith reliance on the facts that it has rights to use that trademark which have been endorsed by the USPTO, which date back five years, and which were never challenged by UA until now.  UA's attempt, five years later, to disrupt Body Armor's nationwide product launch should not be countenanced.

UA's claims that the BODY ARMOR® trademark will infringe and dilute UA's alleged "family" of ARMOUR marks also are belied by the countless other "Armor" or "Armour" based marks in the marketplace, many of which are also registered with the USPTO and many of which – unlike Body Armor's nutrient-enhanced juice beverages –

2

are used on products which are directly competitive with UA's core sportswear business. In fact, *UA's CEO, Kevin Plank, admitted that use of the words "Armor" or "Armour," in a trademark will not cause confusion* given the plethora of other such marks in the market.  Specifically, Mr. Plank stated under oath:

> [T]he coexistence of multiple registrations containing a form of the word armor/armour for articles of clothing has created a crowded market.  In such a crowd, consumers are not likely to be confused between any two of the crowd and may have learned to carefully pick out one from the other.

 The field has grown only more crowded since the time of Mr. Plank's admission fifteen years ago.  A few examples of the dozens of other "Armor" or "Armour" based marks in the marketplace include:

ARMOUR for food, particularly meats (rights back to 1956, registered)
TOMMY ARMOUR for golf equipment and clothing (rights back to 1997, registered)
ARMOR OF GOD AOG SPORTSWEAR for clothing (rights back to 2000, registered)
FOG ARMOR for clothing (rights back to 2004, registered)
CITIZEN ARMOR for clothing (rights back to 2005, registered)
TRUTH SOUL ARMOR for clothing (rights back to 2005, registered)
GOLDEN ARMOR for apparel (rights back to 2005, registered)
WOODY ARMOR for footwear (rights back to 2005, registered)
OPTICAL ARMOR for clothing (rights back to 2005, registered)
G A GOD'S ARMOUR for clothing (rights back to 2006, registered)
AIR ARMOR for vitamin supplements (rights back to 2006, registered)
BIOARMOR + design, for nutritional supplements (rights back to 2006, registered)
WEATHER ARMOR for footwear (rights back to 2007, registered)
ARMOR SHIELD for footwear (rights back to 2007, registered)
BRAIN ARMOR for nutritional supplements (rights back to 2009, registered)
PARTY ARMOR for dietary and nutritional supplements (rights back to 2009, registered)
BODY ARMOR for apparel and accessories (common law usage)
BODY ARMOR for clothing stores (common law usage)
BODY ARMOUR CLOTHING for women's clothing stores (common law usage)
BODY ARMOUR for vitamin supplements (common law usage)
BODY ARMOUR for supplements (common law usage)
BODY ARMOUR for oral immune system fortifier (common law usage)

In 2009, UA even entered into a co-existence agreement with the manufacturer of a beverage called LIQUID ARMOUR. In light of Mr. Plank's own sworn admissions to the USPTO, UA's willingness to enter into a co-existence agreement with the manufacturer of LIQUID ARMOUR beverages, and the dozens of other "Armour" or "Armor" based marks in the market, UA's contention that Body Armor should be prohibited from using its registered BODY ARMOR® trademark borders on frivolous.

Other factors further demonstrate that there is no likelihood of confusion. UA's Complaint does not cite a single instance of any consumer or retailer actually mistakenly believing that BODY ARMOR® is affiliated with UA, despite the facts that use in commerce began in 2010 and the nationwide launch has been underway for nearly a year. Moreover, Body Armor has commissioned a renowned expert to conduct a scientific survey of relevant consumers, and the findings of that survey confirm that only a negligible percentage of consumers believe that BODY ARMOR® is made by or affiliated with UA.

Given the overwhelming weaknesses of their claims, UA's Complaint resorts to misleading tricks to bolster its case. For example, the Complaint alleges that confusion will be exacerbated by Body Armor's use of the phrase "PROTECT + RESTORE" on the product's labeling, which UA contends is similar to its "PROTECT THIS HOUSE" tagline. But, as UA knew *before* they filed their Complaint, Body Armor changed its label to state "HYDRATE + PREVENT" (without, it should be noted, any concession that the PROTECT + RESTORE could possibly cause confusion with UA's PROTECT

THIS HOUSE tagline).  The Complaint fails to disclose this change.  The Complaint alleges that confusion will be exacerbated by what UA disingenuously refers to as the "Interlocking Logo," which UA contends is similar to their interlocking U A logo.  But the Body Armor logo to which UA refers has no interlocking aspect whatsoever – rather, it is a stickman graphic, designed visually to communicate the protective armor that the nutrients in BODY ARMOR beverages provide to the body.  Finally, in an attempt to obscure the fact that Body Armor and UA do not even make competing products, UA's Complaint implies that UA has expanded beyond sportswear and is now also in the business of selling bottled water and other beverages.  That suggestion is directly at odds with UA's annual filings with the U.S. Securities and Exchange Commission, which state that UA operates "*exclusively* in one industry: the development, marketing and distribution of branded performance apparel, footwear and accessories."

In sum, this Complaint is nothing more than an attempt to intimidate and bully an innovative start-up company.  However big a Goliath UA may be in the sportswear category, it is improper for it to try to claim monopoly rights in all marks using ARMOUR or ARMOR.  Body Armor will not be intimidated but instead intends to expose UA's anti-competitive tactics for what they are.

**Responses to Enumerated Allegations**

1. Body Armor denies the allegations contained in paragraph 1 of the Complaint, except Body Armor admits that UA purports to bring this case as a civil action for trademark infringement, trademark dilution, unfair competition, and

5

cybersquatting under the Lanham Act, 15 U.S.C. § 1501, et *seq*. and/or Maryland statutory and common law.

  2.  Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

  3.  Body Armor admits the allegations contained in paragraph 3 of the Complaint.

  4-7.  Paragraphs 4-7 of the Complaint state legal conclusions as to which no response is required.

  8-51.  Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 8-51 of the Complaint.

  52.  Body Armor denies the allegations contained in paragraph 52 of the Complaint.

  53.  Body Armor denies the allegations contained in paragraph 53 of the Complaint, except that Body Armor admits it uses BODY ARMOR® as two words and BODYARMOR as one word in connection with its nutrient-enhanced juice beverages, which were first sold in September 2010.

  54.  Body Armor denies the allegations contained in paragraph 54 of the Complaint, and respectfully refers the Court to Body Armor's stickman logo for its true depiction.

  55.  Body Armor denies the allegations contained in paragraph 55 of the Complaint, except that Body Armor admits that it's stickman logo is depicted on its beverage bottles.

56. Body Armor denies the allegations contained in paragraph 56 of the Complaint, except that Body Armor admits that its stickman logo has appeared horizontally in some of its advertising, and respectfully refers the Court to Century Beverages Distributer's website at www.centurybeverage.com for a true depiction of the stickman logo.

57. Body Armor denies the allegations contained in paragraph 57 of the Complaint, except that Body Armor admits that its stickman logo has appeared horizontally in some of its advertising.

58. Body Armor denies the allegations contained in paragraph 58 of the Complaint, except that Body Armor admits that its stickman logo appears on its website at www.drinkbodyarmor.com, on its Facebook page at www.facebook.com/drinkbodyarmor, and in Internet advertising, advertising at sporting events, athletic club sponsorships, and other uses.

59-60. Body Armor denies the allegations contained in paragraphs 59-60 of the Complaint.

61. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the Complaint.

62. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 62 of the Complaint, except that Body Armor admits that BODY ARMOR® beverages are sold throughout the United States, including in Maryland.

63. Body Armor denies the allegations contained in Paragraph 63 of the Complaint, except that Body Armor admits that BODY ARMOR® beverages are promoted through Body Armor's website www.drinkbodyarmor.com, and that Body Armor's BODY ARMOR® trademark and stickman logo appear on its website.

64. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the Complaint, except that Body Armor admits that it markets its beverages to consumers of varying demographics.

65. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Complaint.

66. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint, except that Body Armor admits it has stated that its beverages are "loaded with identical blends of powerful antioxidants, electrolytes, vitamins and nutrients that provide natural hydration, nutrition, and healthy goodness."

67. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the Complaint, except that Body Armor admits it sponsored the Long Beach Marathon, Del Mar Mud Run, and Chevy Chase Lacrosse Club located in a Washington D.C. suburb, and that its BODY ARMOR® trademark and stickman logo are depicted on jerseys for the Chevy Chase Lacrosse Club.

68. Body Armor denies the allegations contained in paragraph 68 of the Complaint, except that Body Armor admits that the "BODY" element is displayed in

different colored lettering than the "ARMOR" element of the BODY ARMOR® mark on some product packaging, advertising and promotional material.

69.     Body Armor denies the allegations contained in paragraph 69 of the Complaint, except that Body Armor admits that it filed United States Trademark Application Serial No. 85398112 for the mark BABY ARMOR and that it has other pending trademark applications, and respectfully refers the Court to its applications on file with the USPTO for the true contents of the applications.

70.     Body Armor denies the allegations contained in paragraph 70 of the Complaint, except that Body Armor admits that "Armour" and "Armor" differ by only one letter, and respectfully refers the Court to Exhibit D of the Complaint for its true contents.

71.     Body Armor denies the allegations contained in paragraph 71 of the Complaint, except that Body Armor admits that its marketing has used the phrase "Restore your active body."

72.     Body Armor denies the allegations contained in paragraph 72 of the Complaint.

73.     Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 73 of the Complaint.

74-79.   Body Armor denies the allegations contained in paragraphs 74-79 of the Complaint.

80.     Body Armor repeats and re-alleges each of its responses to paragraphs 1-79 of the Complaint as though fully set forth herein.

81.   Body Armor denies the allegations contained in paragraph 81 of the Complaint.

82.   Body Armor repeats and re-alleges each of its responses to paragraphs 1-81 of the Complaint as though fully set forth herein.

83.   Body Armor denies the allegations contained in paragraph 83 of the Complaint.

84.   Body Armor repeats and re-alleges each of its responses to paragraphs 1-83 of the Complaint as though fully set forth herein.

85-86.   Body Armor denies the allegations contained in paragraphs 85-86 of the Complaint.

87.   Body Armor repeats and re-alleges each of its responses to paragraphs 1-86 of the Complaint as though fully set forth herein.

88-92.   Body Armor denies the allegations contained in paragraphs 88-92 of the Complaint.

93.   Body Armor repeats and re-alleges each of its responses to paragraphs 1-92 of the Complaint as though fully set forth herein.

94-95.   Body Armor denies the allegations contained in paragraphs 94-95 of the Complaint.

96.   Body Armor repeats and re-alleges each of its responses to paragraphs 1-95 of the Complaint as though fully set forth herein.

97-98.   Body Armor denies the allegations contained in paragraphs 97-98 of the Complaint.

99. Body Armor repeats and re-alleges each of its responses to paragraphs 1-98 of the Complaint as though fully set forth herein.

100. Body Armor denies the allegations contained in paragraph 100 of the Complaint.

### General Denial

Except as expressly stated above, Body Armor denies each and every allegation in the Complaint.

### Answer To Prayer For Relief

Body Armor specifically denies that UA is entitled to the relief requested or to any other relief.

### Affirmative Defenses

UA's claims are barred, in whole or in part, by the equitable doctrines of estoppel, laches and/or waiver.

[Remainder of page intentionally left blank]

**Reservation Of Rights**

Body Armor reserves the right to assert additional affirmative defenses based upon further investigation and discovery.

Dated:  July 12, 2012
  New York, New York

                Respectfully submitted,

                By: /s/ David H. Bernstein
                David H. Bernstein (admitted *pro hac vice*)
                Jyotin Hamid (admitted *pro hac vice*)
                DEBEVOISE & PLIMPTON LLP
                919 Third Avenue
                New York, New York 10022
                Tel: (212) 909-6696
                dhbernstein@debevoise.com
                jhamid@debevoise.com

                Donald A. Rea (Fed. Bar No 23194)
                SAUL EWING LLP
                500 East Pratt Street, Suite 900
                Baltimore, Maryland  21202
                Tel: (410) 332-8600
                drea@saul.com

                *Attorneys for Defendant*
                *Body Armor Nutrition, LLC*