**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

------------------------------------ x

| | | |
|---|---|---|
| **UNDER ARMOUR, INC.**<br>1020 Hull Street<br>Baltimore, Maryland 21230 | :<br>:<br>:<br>: | |
| Plaintiff, | :<br>: | 1:12-cv-01283-JKB |
| v. | :<br>:<br>: | **ECF Case** |
| **BODY ARMOR NUTRITION, LLC.**<br>630 Clinton Place<br>Beverly Hills, California 90210 | :<br>:<br>:<br>: | |
| Defendant. | : | |

------------------------------------ x

**AMENDED ANSWER**

Defendant Body Armor Nutrition, LLC ("Body Armor"), by its undersigned attorneys, for its Amended Answer to the First Amended Complaint ("FAC") of Plaintiff Under Armour, Inc. ("UA"), states as follows:

**Preliminary Statement**

This lawsuit is a prime example of trademark bullying by a corporate giant seeking to stifle an innovative start-up company. Last year – after years of planning including registration of its BODY ARMOR® trademark and pilot sales of its new product – Body Armor commenced a nationwide launch of a revolutionary, category-creating line of nutrient-enhanced juice beverages, which are marketed and sold under the federally registered BODY ARMOR® trademark. UA, a massive public company whose business is focused exclusively on sports apparel, now contends that Body Armor's sale

and promotion of nutrient-enhanced juice beverages under the BODY ARMOR® trademark will infringe and dilute UA's alleged "family" of ARMOUR marks.  But UA's own admissions, conduct, and failure to act sooner all demonstrate that UA's claims against Body Armor are without merit.  It is impossible that consumers or retailers of either brand would confuse the two.  UA and Body Armor operate in disparate industries, produce distinctly unrelated products, and share no branding or logo similarities.

UA's failure to act sooner belies its claim that irreparable harm will result if Body Armor continues to use its BODY ARMOR® trademark.  UA's FAC fails to disclose that *the BODY ARMOR® trademark is registered* with the U.S. Patent & Trademark Office ("USPTO"), that the intent-to-use application for the trademark was filed with the USPTO more than *five years ago*, that the trademark was first used in commerce more than *two years ago*, that the nationwide launch of the product using the trademark has been underway for more than a year, and that, until now, UA never raised any objection to the trademark.  Body Armor has built a brand around the BODY ARMOR® trademark in good faith reliance on the facts that it has rights to use that trademark which have been endorsed by the USPTO, which date back five years, and which were never challenged by UA until now.  UA's attempt, five years later, to disrupt Body Armor's business should not be countenanced.

UA's claims that the BODY ARMOR® trademark will infringe and dilute UA's alleged "family" of ARMOUR marks also are belied by the countless other "Armor" or "Armour" based marks in the marketplace, many of which are also registered with the USPTO and many of which – unlike Body Armor's nutrient-enhanced juice beverages –

are used on products which are directly competitive with UA's core sportswear business. In fact, ***UA's CEO, Kevin Plank, admitted that use of the words "Armor" or "Armour," in a trademark will not cause confusion*** given the plethora of other such marks in the market. Specifically, Mr. Plank stated under oath:

> [T]he coexistence of multiple registrations containing a form of the word armor/armour for articles of clothing has created a crowded market. In such a crowd, consumers are not likely to be confused between any two of the crowd and may have learned to carefully pick out one from the other.

The field has grown only more crowded since the time of Mr. Plank's admission fifteen years ago. A few examples of the dozens of other "Armor" or "Armour" based marks in the marketplace include:

ARMOUR for food, particularly meats (rights back to 1956, registered)
TOMMY ARMOUR for golf equipment & clothing (rights back to 1997, registered)
GOLDEN ARMOR for apparel (rights back to 2005, registered)
WOODY ARMOR for footwear (rights back to 2005, registered)
OPTICAL ARMOR for clothing (rights back to 2005, registered)
AIR ARMOR for vitamin supplements (rights back to 2006, registered)
WEATHER ARMOR for footwear (rights back to 2007, registered)
ARMOR SHIELD for footwear (rights back to 2007, registered)
ARMOURSHIELD for clothing (rights back to 1990, registered)
BODY ARMOUR for hunting harnesses (rights back to 2006, registered)
ICEARMOR for ice fishing clothing (rights back to 2003, registered)
BRAIN ARMOR for nutritional supplements (rights back to 2009, registered)
PARTY ARMOR for dietary & nutritional supplements (rights back to 2009, registered)
ARMOR V ADVANCED MULTI NUTRIENT COMPLEX for dietary & nutritional
    supplements (rights back to 2009, registered)
INNER ARMOUR for dietary & nutritional supplements (rights back to 2004, registered)
BODY ARMOR for apparel & accessories (common law usage)
BODY ARMOR for clothing stores (common law usage)
BODY ARMOUR CLOTHING for women's clothing stores (common law usage)
BODY ARMOUR for vitamin supplements (common law usage)
BODY ARMOUR for supplements (common law usage)
BODY ARMOUR for oral immune system fortifier (common law usage)

3

In 2009, UA even entered into a co-existence agreement with the manufacturer of a beverage called LIQUID ARMOUR. In August 2012, however, after Body Armor raised this co-existence in its original Answer to UA's original Complaint, UA purchased the rights to the LIQUID ARMOUR mark, granting the mark's previous owner a non-assignable, royalty-free license to use the LIQUID ARMOUR mark on beverages.

Despite the co-existence in the marketplace of numerous marks containing the words "Armor" or "Armour," UA now purports to be seeking an order forcing the USPTO "to cancel/refuse *all* trademark registrations/applications for marks comprised of or containing ARMOR [or] ARMOUR," FAC Prayer for Relief at ¶ F (emphasis added). In essence, UA is asking this Court to grant UA monopoly rights over English language words "Armor" and "Armour," with no limitations whatsoever, notwithstanding the fact that dozens of such marks already coexist with UA's UNDER ARMOUR mark.

In light of Mr. Plank's own sworn admissions to the USPTO, UA's willingness to enter into a co-existence agreement with the manufacturer of LIQUID ARMOUR beverages (and its subsequent efforts to avoid the effects of that agreement by purchasing rights in that mark), and the dozens of other "Armor" or "Armour" based marks in the market, UA's contention that Body Armor should be prohibited from using its registered BODY ARMOR® trademark, and its broader assertion of monopoly rights over words "Armor" and "Armour," border on frivolous.

Other factors further demonstrate that there is no likelihood of confusion. Although UA's FAC generally alleges confusion, it does not cite a single instance of any consumer or retailer actually mistakenly believing that BODY ARMOR® is affiliated

with UA, despite the facts that use in commerce began in 2010 and the nationwide launch has been underway for more than a year.  Moreover, Body Armor has commissioned a renowned expert to conduct a scientific survey of relevant consumers, and the findings of that survey confirm that only a negligible percentage of consumers believe that BODY ARMOR® is made by or affiliated with UA.

Given the overwhelming weaknesses of its claims, UA's FAC resorts to misleading tricks to bolster UA's case.  For example, UA alleged in its original Complaint that confusion will be exacerbated by Body Armor's use of the phrase "PROTECT + RESTORE" on the product's labeling, which UA contends is similar to its "PROTECT THIS HOUSE" tagline.  But, as UA knew even before the filing of the original Complaint, Body Armor changed its label on new products, which no longer contained the word PROTECT (without, it should be noted, any concession that the PROTECT + RESTORE could possibly cause confusion with UA's PROTECT THIS HOUSE tagline).  UA continues to mislead the Court in its FAC, stating in the present tense that Body Armor "*uses* the tagline 'PROTECT + RESTORE' in connection with its products," FAC ¶ 60 (emphasis added), but then disingenuously refers to Body Armor's residual products and old Facebook posts.  FAC ¶ 61.

The FAC also alleges that confusion will be exacerbated by what UA disingenuously refers to as the "Interlocking Logo," which UA contends is similar to their interlocking U A logo.  But the Body Armor logo to which UA refers has no interlocking aspect whatsoever.  Rather, that logo is a stickman graphic, designed visually to communicate the protective armor that the nutrients in BODY ARMOR®

beverages provide to the body.  Furthermore, as part of a broader modification to its label, Body Armor has revised the stickman logo to streamline its presentation on the label (by bringing the legs of the stickman together), which, among other things, makes any claim that the Body Armor stickman logo is an "Interlocking Logo" even more absurd.  This new logo, as shown below (the "New Label"), has already begun to be rolled out in promotional materials and will appear on packaging in early 2013.



Tellingly, although UA was informed about the logo change and shown the New Label before it filed the FAC, UA makes only a passing reference to Body Armor's "plans to make some changes to its bottle design."  FAC ¶ 54.  It then ignores the

changes to Body Armor's stickman outright and continues to refer to Body Armor's so-called "Interlocking Logo." *See, e.g.*, FAC ¶¶ 55-59.

Finally, in an attempt to obscure the fact that Body Armor and UA do not even make competing products, UA's FAC implies that UA has expanded beyond sportswear and is now also in the business of selling bottled water and other beverages. That suggestion is directly at odds with UA's annual filings with the U.S. Securities and Exchange Commission, which state that UA operates "*exclusively* in one industry: the development, marketing and distribution of branded performance apparel, footwear and accessories." UA's assertion is also belied by its voluminous production of catalogs – dating from 2000 to 2012 – that list thousands of UA's products but ***make no reference whatsoever to water or beverage products***.

In sum, the FAC is nothing more than an attempt to intimidate and bully an innovative start-up company. However big a Goliath UA may be in the sportswear category, it is improper for it to try to claim monopoly rights in all marks using ARMOUR or ARMOR. Body Armor will not be intimidated but instead intends to expose UA's anti-competitive tactics for what they are.

## Responses to Enumerated Allegations

1.  Body Armor denies the allegations contained in paragraph 1 of the FAC, except Body Armor admits that UA purports to bring this case as a civil action for trademark infringement, trademark dilution, unfair competition, and cybersquatting under the Lanham Act, 15 U.S.C. § 1501, et *seq*. and/or Maryland statutory and common law.

2. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the FAC.

3. Body Armor admits the allegations contained in paragraph 3 of the FAC.

4-7. Paragraphs 4-7 of the FAC state legal conclusions as to which no response is required.

8-51. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraphs 8-51 of the FAC.

52. Body Armor denies the allegations contained in paragraph 52 of the FAC.

53. Body Armor denies the allegations contained in paragraph 53 of the FAC, except that Body Armor admits it uses BODY ARMOR® as two words and BODYARMOR as one word in connection with its nutrient-enhanced juice beverages, which were first sold in September 2010.

54. Body Armor admits that it has revised its label to include a modified version of its stickman logo, as reflected in the New Label pictured on page 6 above, and that it will continue to use its federally registered trademark, BODY ARMOR®.

55. Body Armor denies the allegations contained in paragraph 55 of the FAC, and respectfully refers the Court to Body Armor's original stickman logo, pictured in the original Complaint, for its true depiction, as well as the new stickman logo reflected in the New Label and pictured on page 6 above.

56. Body Armor denies the allegations contained in paragraph 56 of the Complaint, except that Body Armor admits that its stickman logo is depicted on its beverage bottles.

57. Body Armor denies the allegations contained in paragraph 57 of the Complaint, except that Body Armor admits that its stickman logo has appeared horizontally in some of its advertising, and respectfully refers the Court to Century Beverages Distributor's website at www.centurybeverage.com/otherselections.html for a true depiction of the stickman logo, which is vertical, not horizontal as shown on the right.

58. Body Armor denies the allegations contained in paragraph 58 of the FAC, except that Body Armor admits that its stickman logo has appeared horizontally in some of its advertising.

59. Body Armor denies the allegations contained in paragraph 59 of the FAC, except that Body Armor admits that its stickman logo appears on its website at www.drinkbodyarmor.com, on its Facebook page at www.facebook.com/drinkbodyarmor (shown on the right), and in Internet advertising, advertising at sporting events,  athletic club sponsorships, and other uses.

60. Body Armor denies the allegations contained in paragraph 60 of the FAC.

61. Body Armor denies the allegations contained in paragraph 61 of the FAC and avers that Body Armor stopped using the phrase PROTECT + RESTORE on all new inventory and marketing materials before the filing of the original Complaint and the FAC.

62. Body Armor denies the allegations contained in paragraph 62 of the FAC.

63. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 63 of the FAC.

64. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the FAC, except that Body Armor admits that BODY ARMOR® beverages are sold throughout the United States, including in Maryland.

65. Body Armor denies the allegations contained in Paragraph 65 of the FAC, except that Body Armor admits that BODY ARMOR® beverages are promoted through Body Armor's website www.drinkbodyarmor.com and through amazon.com and that Body Armor's BODY ARMOR® trademark and stickman logo appear on its website, as shown below.



66. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the FAC, except that Body Armor admits that it markets its beverages to consumers of varying demographics.

67. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the FAC.

68. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of the FAC, except that Body Armor admits it has stated that its beverages are "loaded with identical blends of powerful antioxidants, electrolytes, vitamins and nutrients that provide natural hydration, nutrition, and healthy goodness."

69. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 69 of the FAC, except that Body Armor admits that, like many beverage companies, its products are endorsed by major league athletes, and that it has announced that Jason Pierre-Paul, Ray Rice, Lesean McCoy, Rob

11

Gronkowski, and Mike Trout have endorsed and continue to promote its beverages and that these athletes are featured on Body Armor's website and Facebook page.

70.     Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the FAC, except that Body Armor admits it sponsored the Long Beach Marathon, Del Mar Mud Run, and Chevy Chase Lacrosse Club located in a Washington D.C. suburb, and that its BODY ARMOR® trademark and stickman logo are depicted on jerseys for the Chevy Chase Lacrosse Club, and avers that no one could possibly confuse the BODY ARMOR® branded items depicted in the FAC as products coming from, associated with, or sponsored by UA.

71.     Body Armor denies the allegations contained in paragraph 71 of the FAC, except that Body Armor admits that the "BODY" element is displayed in different colored lettering than the "ARMOR" element of the BODY ARMOR® mark on some product packaging, advertising, and promotional material.

72.     Body Armor denies the allegations contained in paragraph 72 of the FAC, except that Body Armor admits that it filed an intent-to-use United States Trademark Application Serial No. 85398112 for the mark BABY ARMOR (although Body Armor does not presently offer any BABY ARMOR products) and admits that it filed the other applications identified in paragraph 72.

73.     Body Armor denies the allegations contained in paragraph 73 of the FAC, except that Body Armor admits that "Armor" and "Armour" differ by only one letter, and respectfully refers the Court to Exhibit D of the Complaint for its true contents.

74. Body Armor denies the allegations contained in paragraph 74 of the FAC, except that Body Armor admits that its marketing has used the phrase "Restore your active body."

75. Body Armor denies the allegations contained in paragraph 75 of the FAC.

76. Body Armor is without knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the FAC.

77-82. Body Armor denies the allegations contained in paragraphs 77-82 of the FAC.

83. Body Armor repeats and re-alleges each of its responses to paragraphs 1-82 of the FAC as though fully set forth herein.

84. Body Armor denies the allegations contained in paragraph 84 of the FAC.

85. Body Armor repeats and re-alleges each of its responses to paragraphs 1-84 of the FAC as though fully set forth herein.

86. Body Armor denies the allegations contained in paragraph 86 of the FAC.

87. Body Armor repeats and re-alleges each of its responses to paragraphs 1-86 of the FAC as though fully set forth herein.

88-89. Body Armor denies the allegations contained in paragraphs 88-89 of the FAC.

90. Body Armor repeats and re-alleges each of its responses to paragraphs 1-89 of the FAC as though fully set forth herein.

91-95. Body Armor denies the allegations contained in paragraphs 91-95 of the FAC.

96. Body Armor repeats and re-alleges each of its responses to paragraphs 1-95 of the FAC as though fully set forth herein.

97-98. Body Armor denies the allegations contained in paragraphs 97-98 of the FAC.

99. Body Armor repeats and re-alleges each of its responses to paragraphs 1-98 of the FAC as though fully set forth herein.

100-101. Body Armor denies the allegations contained in paragraphs 100-101 of the FAC.

102. Body Armor repeats and re-alleges each of its responses to paragraphs 1-101 of the FAC as though fully set forth herein.

103. Body Armor denies the allegations contained in paragraph 103 of the FAC.

## General Denial

Except as expressly stated above, Body Armor denies each and every allegation in the Complaint.

## Answer To Prayer For Relief

Body Armor specifically denies that UA is entitled to the relief requested or to any other relief.

**Affirmative Defenses**

UA's claims are barred, in whole or in part, by the equitable doctrines of estoppel, laches and/or waiver.

**Reservation Of Rights**

Body Armor reserves the right to assert additional affirmative defenses based upon further investigation and discovery.

**Prayer for Relief**

Body Armor respectfully requests that the Court enter judgment in its favor on each and every claim for relief set forth in the FAC and award Body Armor all of its litigation expenses, including its reasonable attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1117 and other applicable laws, and such other relief as the Court may deem appropriate.

Dated:  November 5, 2012
         New York, New York

                                    Respectfully submitted,

                                    By: /s/ David H. Bernstein
                                    David H. Bernstein (admitted *pro hac vice*)
                                    Jyotin Hamid (admitted *pro hac vice*)
                                    Jane Shvets (admitted *pro hac vice*)
                                    Amanda Bartlett (admitted *pro hac vice*)
                                    DEBEVOISE & PLIMPTON LLP
                                    919 Third Avenue
                                    New York, New York 10022
                                    Tel: (212) 909-6696
                                    dhbernstein@debevoise.com
                                    jhamid@debevoise.com
                                    jshvets@debevoise.com
                                    ambartle@debevoise.com

Donald A. Rea (Fed. Bar No 23194)
SAUL EWING LLP
500 East Pratt Street, Suite 900
Baltimore, Maryland  21202
Tel: (410) 332-8600
drea@saul.com

Jeffrey R. Cohen (Fed. Bar No. 13869)
MILLEN, WHITE, ZELANO &
BRANIGAN, P.C.
2200 Clarendon Blvd., Suite 1400
Arlington, VA 22201
Tel: (703) 243-6333
cohen@mwzb.com

*Attorneys for Defendant
Body Armor Nutrition, LLC*