# FINNEGAN | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

DOUGLAS A RETTEW
202.408.4161
doug.rettew@finnegan.com

May 9, 2013

The Honorable James K. Bredar    **VIA ECF**
United States District Judge
United States District Court
District Of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

Under Armour, Inc. v. Body Armor Nutrition, LLC (Civil No. JKB 12-128)

Dear Judge Bredar:

On behalf of Plaintiff Under Armour, Inc. ("Under Armour"), we write to urgently request an extension of the May 15, 2013 deadline to file dispositive motions.[1] For the reasons that follow, Under Armour respectfully requests that the deadline to file dispositive motions be extended until after the Court decides Under Armour's Motion to Compel. Under Armour asked Body Armor if it would consent to such an extension. Body Armor refused.

As discussed during the parties' April 17 teleconference with the Court, Under Armour filed this trademark-infringement case because, among other things, Defendant Body Armor Nutrition's ("Body Armor") BODY ARMOR name and mark are likely to be confused with Under Armour's UNDER ARMOUR, ARMOUR, and ARMOUR-formative names/marks. Throughout the course of this over year-long litigation, Body Armor has consistently maintained that confusion is neither occurring nor likely, including stating in its initial pleading to the Court that "[i]t is impossible that consumers or retailers of either brand would confuse the two." (Amended Answer, p.2 of "Preliminary Statement.")

Over eight months ago, Under Armour served Body Armor with interrogatories seeking all instances of confusion, including inquiries/comments referring to Under Armour. In its response, Body Armor failed to identify a single instance of confusion, including any inquiry/comment. In the course of depositions, Body Armor's Founder and CEO, Lance Collins, testified as Body Armor's corporate designee on the topic of confusion that he is not aware of

---

[1] Body Armor indicated today that it intends to move for summary judgment by the May 15 deadline. Thus, under Local Rule 105(2)(c) and Federal Rule of Civil Procedure 6(d), Under Armour's cross-motion for summary judgment (both opposing Body Armor's motion and in support of its own motion) will be due seventeen (17) days after service of Body Armor's opening motion.

any confusion. However, when asked how he prepared to testify on Body Armor's behalf on this topic, Mr. Collins stated "I didn't do anything. I reviewed one survey, which was at—I am sorry, I reviewed one survey, Pepperdine University, yesterday."

Having itself witnessed confusion in various contexts as this litigation progressed, including at events that Body Armor sponsored/attended, Under Armour grew increasingly concerned that Body Armor had failed its obligation to make reasonable inquiries into incidents of confusion. As a result, Under Armour undertook its own investigation at a sports expo sponsored and attended by Body Armor. At the expo, Body Armor's employee Mr. Andrew Lloyd admitted that confusion happens "a lot." Body Armor's employee Mr. Dustin McDonald also acknowledged that confusion does occur.

As a result, Under Armour expressed to Body Armor concern that Body Armor was not adequately investigating and disclosing instances of confusion that it knew or should have known about. Despite the seriousness of its obligations to do so and the potentially significant impact of such evidence on this case, Body Armor refused to undertake any further effort, responding that it is not "reasonably possible" to obtain such information.

Indeed, after requesting to depose Mr. Lloyd about the confusion he referenced during the sports expo, Body Armor initially refused to make him available. When he was ultimately made available, Mr. Lloyd testified that confusion had occurred as recently as the day before and that about 2-3 people *a day* ask him whether Body Armor and Under Armour are affiliated. He estimates that this has happened with possibly as many as 450 people over the last year. In addition to questions about affiliation, Mr. Lloyd acknowledged that about 20 people have confused Body Armor and Under Armour in other ways.

Mr. McDonald, Body Armor's Area Marketing Manage, testified during his deposition that he has had to explain the relationship between Body Armor and Under Armour, telling people that "they are not affiliated." Presumably, consumer confusion precipitated the need to "explain the relationship" and dispel the assumption that Body Armor and Under Armour are "affiliated."

While not required to establish a likelihood of confusion—the standard for proving trademark infringement—this Court and others consider that evidence of actual confusion "is entitled to substantial weight as it provides the *most compelling evidence* of likelihood of confusion." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 937 (4th Cir. 1995) (emphasis added).

Body Armor's obligations to investigate and preserve confusion evidence and other relevant facts are undeniable. Equally undeniable is the fact that Body Armor did not undertake an adequate investigation to learn about confusion and consumer inquiries that its employees experience multiple times every day. Mr. Lloyd—a Body Armor "brand ambassador" who describes himself as a public "face of Body Armor" and "the one who makes the connection between the drink and the customer"—was never once asked to record or report this highly relevant information. Specifically, Mr. Lloyd testified during his deposition:

Page 3

| | |
|---|---|
| Question: | Do you document when these people ask you if Under Armour and Body Armor are affiliated? |
| Answer: | No. |
| Question: | Have you been asked to document it? |
| Answer: | No. |
| Question: | Have you reported these instances to anyone? |
| Answer: | No. |
| Question: | Have you been asked to report these instances to anyone? |
| Answer: | No. |

. . . . . . . . . . . . .

| | |
|---|---|
| Question: | Have you reported these 20 incidents of confusion to anyone? |
| Mr. Kagan: | Objection; mischaracterizes testimony. |
| Answer: | No. |
| Question: | Have you been asked to report instances of confusion with Under Armour to anyone? |
| Answer: | No. |

Similarly, Mr. McDonald did not record, track, or otherwise preserve incidents of confusion. Accordingly, during his deposition, Mr. McDonald could not recall the who, what, when, where, and amount of the confusion that he had encountered. For example, Mr. McDonald testified "I don't know" across the board when asked whether he has had to explain the relationship between Under Armour and Body Armor more than 10, 50, 100, or 1,000 times.

In addition to Mr. Lloyd, Body Armor employs "brand ambassadors" throughout the country to actively promote its products. Like Mr. Lloyd, however, none have been identified has having any knowledge of confusion. If their experiences are consistent with Mr. Lloyd's, which there is every reason to believe they would be, then there is additional, meaningful evidence of actual confusion that has not been revealed (and possibly not even investigated or preserved) by Body Armor that could significantly impact the landscape of this case. For example, if there are just nine others with experiences like Mr. Lloyd, there could have been as many as 4,500 (and possibly more) incidents of actual confusion over the last year—a level virtually unheard of in trademark-infringements cases.

During the parties' teleconference with the Court, the Court suggested that Under Armour could file a Motion to Compel evidence of actual confusion. This motion has now been prepared, is in the process of being finalized, and will be filed as soon as possible. Because the outcome of Under Armour's Motion to Compel could result in relief or additional discovery that could potentially significantly impact the parties' respective claims and/or defenses, it is premature for the parties to move forward with dispositive motions by May 15. Doing so would almost certainly result in the unnecessary expense of judicial resources and significant cost to Under Armour, which would potentially have to file all-new briefing if the Court grants its Motion to Compel.

Page 4

      Because of the urgency of this request, Under Armour has filed its request by letter.  If your Honor prefers that Under Armour file a formal motion, it will do so.  Also, Under Armour is available for a teleconference should your Honor wish to discuss this matter by phone.

      We very much appreciate the Court's attention to this matter.

                                                  Respectfully Submitted,

                                                  Douglas A. Rettew

cc:  All counsel of record (via ECF)